**Jana KARL, et al., Appellants,**

v.

**UPTOWN DRINK, LLC,
et al., Respondents.**

**No. A12–0166.**

Supreme Court of Minnesota.

Aug. 14, 2013.

Steven Andrew Smith, Megan I. Brennan, Katherine M. Vander Pol, Nichols Kaster, PLLP, Minneapolis, MN, for appellants.

Lori Swanson, Attorney General, Kelly S. Kemp, Jackson Evans, Assistant Attorneys General, Saint Paul, MN, for amicus curiae Commissioner of Minnesota Department of Labor and Industry.

Richard L. Kaspari, Metcalf, Kaspari, Engdahl & Lazarus, P.A., Saint Paul, MN, for amicus curiae Unite Here Local 17.

## OPINION

GILDEA, Chief Justice.

Appellants, roughly 750 servers, bartenders, and security guards ("the employees"), brought a class action against their employers, respondents Uptown Drink, LLC, Drink, Inc., Downtown Entertainment Ventures LLC d/b/a Spin Night Club, the parent corporation Fun Group, Inc., and the parent corporation's president Michael Whitelaw ("the employers"). The employees alleged five causes of action, including "Unlawful Deductions" made in violation of Minn.Stat. § 181.79 (2012). Before closing arguments, the employees moved for a directed verdict on their section 181.79 claim. The district court denied the motion and submitted the section 181.79 claim to the jury. The jury found that the employers did not violate section 181.79.

After the verdict, the employees requested judgment as a matter of law ("JMOL") pursuant to Minn. R. Civ. P. 50.02 on their section 181.79 claim. The district court denied the motion. The court of appeals affirmed. *Karl v. Uptown Drink, LLC,* No. A12–0166, 2012 WL 3262974, at *5 (Minn.App. Aug. 6, 2012). Because we conclude that the employees were entitled to judgment as a matter of law on their section 181.79 claim, we reverse and remand to the district court with instructions to enter judgment as a matter of law in favor of the employees on liability under section 181.79 and for further proceedings to determine appropriate damages.

The employees filed a class action complaint against the employers, alleging violations of the Minnesota Fair Labor Stan-

dards Act ("MFLSA"), Minn.Stat. §§ 177.21–.44 (2012), and Minn.Stat. § 181.79. At trial, witnesses—including the employers' witnesses—testified that the employees were required to pay for register shortages, and the bills of customers who walked out without paying ("walk-outs") or failed to sign credit-card receipts ("unsigned credit-card receipts"), from their gratuities. Some of the witnesses indicated that employees who failed to make these payments could face employment termination. The employers did not dispute that the employees were required to pay for shortages "on occasion," but argued that the payments were not deductions because the employees on "their own volition [made] a decision that rather than taking a write-up for improperly failing to handle cash," they would cover the shortages to the employers.

After the close of the evidence, the employees moved for a directed verdict, arguing that there was "a violation of the minimum-wage laws for unlawful deductions." The district court denied the motion, and submitted the employees' claims to the jury. The jury found in favor of the employers on the employees' section 181.79 claim.[1]

After the verdict, the employees moved for JMOL pursuant to Minn. R. Civ. P. 50.02 or, in the alternative, for a new trial on the section 181.79 claim. The district court concluded that there was evidence that the employers required their employees to pay for register shortages, walkouts, and unsigned credit-card receipts, and that the employees made these payments from their gratuities. But the court found that

section 181.79 requires wages to fall below the statutory minimum wage in section 177.24 in order for deductions to violate section 181.79. Because the employees failed to show that the deductions from their gratuities resulted in any employee's compensation falling below the minimum wage, the court concluded that the verdict with respect to the section 181.79 claim was not "contrary to applicable law."

Both sides appealed to the court of appeals. As relevant here, the employees argued that the district court improperly denied their motion for JMOL based on the incorrect legal conclusion that deductions from wages were lawful under section 181.79 as long as the employee's wages exceeded the minimum wage. To support this argument, the employees relied on our decision in *Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 775 (Minn.2004), which defined wages under section 181.79 as " 'all compensation for performance of services by an employee for an employer.' " *Id.* (quoting Equal Pay for Equal Work Law ("EPEWL"), Minn. Stat. § 181.66, subd. 4 (2002)). The employees argued that the district court's conclusion was contrary to this definition of the term "wages" in section 181.79.

The court of appeals affirmed. *Karl,* 2012 WL 3262974, at *5. The court of appeals concluded that the employees were not entitled to recover under section 181.79 because, applying requirements from the MFLSA, the employees failed to present evidence showing "their wages ever fell below the minimum wage." *Id.* We grant-

---

1. On the employees' minimum wage claims under the MFLSA, the jury found damages for minimum wage violations at Uptown Drink and Drink for bartenders and servers. The jury found no damages for security guards on the minimum wage claims because the security guards were paid at least minimum wage.

The jury also found no minimum wage violations at Spin but found that Spin failed to maintain records. The jury's findings with regard to the employees' minimum wage claims under the MFLSA were not appealed to the court of appeals, and therefore are not at issue in this case.

ed the employees' petition for review.[2]

This case comes to us on review of the denial of the employees' motion for JMOL on their Minn.Stat. § 181.79 claim. We review the denial of a motion for JMOL de novo. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn.2009). When reviewing the denial of a motion for JMOL, we construe the evidence in the light most favorable to the prevailing party and ask whether "there is [a] legally sufficient evidentiary basis for a reasonable jury to find" for the prevailing party. *Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 229 (Minn. 2010) (quoting Minn. R. Civ. P. 50.01(a)) (internal quotation marks omitted).

### I.

The employees allege that the employers violated Minn.Stat. § 181.79 because the employers required the employees to use gratuities to pay for register shortages, walkouts, and unsigned credit-card receipts. Section 181.79 makes it unlawful for an employer to:

> [M]ake any deduction, directly or indirectly, from the wages due or earned by any employee, ... for lost or stolen property, damage to property, or to recover any other claimed indebtedness running from employee to employer, unless the employee, after the loss has occurred or the claimed indebtedness has arisen, voluntarily authorizes the employer in writing to make the deduction[.]

In concluding that the employees were not entitled to JMOL, the court of appeals suggested that section 181.79 did not re-

strict deductions made from employees' gratuities. *Karl*, 2012 WL 3262974, at *4. The court of appeals and district court also interpreted section 181.79 as applying only when employees' wages fall below the minimum wage set forth in section 177.24.

█ We turn first to these two questions of statutory interpretation. The object of all statutory interpretation "is to ascertain and effectuate the intention of the [L]egislature." Minn.Stat. § 645.16 (2012). Questions of statutory interpretation are questions of law that we review de novo. *Clark v. Lindquist*, 683 N.W.2d 784, 785 (Minn.2004). Once we have interpreted the statute, we next determine whether the employees were entitled to JMOL.

### A.

█ We must first determine whether gratuities satisfy the definition of "wages" under section 181.79. The district court found that the deductions at issue came from the employees' gratuities, not from their hourly pay. The court of appeals suggested that "wages" under section 181.79 do not include gratuities. *Karl*, 2012 WL 3262974, at *4–5. The employees urge us to conclude that the term "wages" in section 181.79 includes gratuities. We agree with the employees.

█ Once we interpret a statute, our interpretation "becomes part of the statute as though written therein." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn.2012) (citing *Sandal v. Tallman Oil Co.*, 298 Minn. 264, 268, 214 N.W.2d 691, 693 (1974)).[3] Consistent

---

**2.** After the employees filed their petition for review, the employers' counsel withdrew as counsel of record without substitution. Consequently, the employers did not participate in this appeal.

**3.** We also applied this rule in *Wynkoop v. Carpenter*, 574 N.W.2d 422, 426 (Minn.1998)

("When a judicial interpretation of a statute has remained undisturbed, it becomes part of the terms of the statute itself."). Prior to applying the rule, we concluded that the term at issue in that case did "not have a clear and unambiguous meaning." *Id.* But *Wynkoop* should not be read to require a finding that

with this principle, we interpret section 181.79 the same way in this case that we did in *Brekke.*

In *Brekke,* an employee sued his employer for violation of section 181.79. 683 N.W.2d at 774. The district court concluded the company violated section 181.79 when it deducted $60,000 from the employee's "accrued unpaid salary." *Id.* at 773–74. We held the employee's accrued salary constituted "wages" that were due to the employee. *Id.* at 775. In reaching that conclusion, we applied the definition of the term "wages" from the EPEWL to section 181.79. *Id.* (citing Minn.Stat. § 181.66, subd. 4). *Brekke* controls our interpretation of the term "wages" in section 181.79.[4] *See Caldas,* 820 N.W.2d at 836.

Just as in *Brekke,* we define the term "wages" in section 181.79 using the definition of "wages" in the EPEWL. The EPEWL defines wages as "all compensation for performance of services by an employee for an employer whether paid by the employer or another person." Minn. Stat. § 181.66, subd. 4. Gratuities plainly qualify as "wages" under this definition. A gratuity is a means of compensation because it is money "given or received as payment . . . for a service." *The American Heritage Dictionary* 385 (3d ed.1996). A gratuity is paid to an employee for performing a service for an employer, such as serving food and drinks to the employers' patrons. Gratuities also fall under the

definition of "wages" even though the money is paid by "another person." Minn. Stat. § 181.66, subd. 4. Our interpretation is consistent with the purpose of section 181.79: to prevent an employer from using "self help to enforce a claimed indebtedness against an employee by a unilateral offset that would force the employee to take action if he disputes the indebtedness." *Brekke,* 683 N.W.2d at 776. This purpose would be undermined if gratuities were not "wages" because it would allow employers whose employees receive gratuities to use self help to enforce a claimed indebtedness, creating different levels of protection for tipped and non-tipped employees.

Because we apply the EPEWL definition of "wages" to section 181.79, and gratuities are "wages" under that definition, we hold that the court of appeals erred when it concluded that the employees were not entitled to JMOL because the deductions were taken from their gratuities rather than their hourly pay.

### B.

■ We turn next to the question of whether the district court erred when it determined that employees seeking to recover under section 181.79 must show that the deductions at issue caused their wages to fall below the minimum wage. The district court concluded that the employees had to make this showing in order for their section 181.79 claim to succeed. The court

the statutory text is ambiguous before we may follow our previous interpretation of that same statutory text.

4. The court of appeals acknowledged our application of the EPEWL definition of "wages" to section 181.79 in *Brekke,* but reasoned that *Milner v. Farmers Insurance Exchange,* 748 N.W.2d 608, 617 (Minn.2008), implicitly overruled *Brekke* on the meaning of "wages" in section 181.79. *Karl,* 2012 WL 3262974, at *5 n. 6. The court of appeals is incorrect. In

*Milner,* we looked to the Minnesota Payment of Wages Act ("PWA"), Minn.Stat. §§ 181.01–.171 (2012), in deciding to whom civil penalties are payable under the MFLSA, noting that the two acts are "related." 748 N.W.2d at 617. *Milner* has no bearing on our holding in *Brekke* because section 181.79 is not part of the PWA or the MFLSA. *See Milner,* 748 N.W.2d at 617. Accordingly, *Milner* did not overrule *Brekke,* implicitly or otherwise.

of appeals agreed and held that the MFLSA and section 181.79 were related acts,[5] arguably making administrative rules "pertaining to MFLSA" applicable to section 181.79. *Karl*, 2012 WL 3262974, at *5. In so holding, the court of appeals applied administrative rules relating to the MFLSA, concluding that the employees must prove that their wages fell below the minimum wage to succeed on their section 181.79 claim. *Id.* The employees argue that the lower courts erred. We agree.

The plain language of section 181.79 does not require employees to show that deductions caused their wages to fall below the minimum wage. The statute says nothing about the minimum wage. Section 181.79 instead prohibits "*any* deduction . . . from the wages due or earned by any employee . . . [for a] claimed indebtedness" to the employer. (Emphasis added).[6] We cannot read into the statute a requirement that the Legislature has omitted, such as a requirement that deductions are unlawful only if those deductions cause the employee's wages to fall below the minimum wage. *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 756 (Minn.2013) (noting that we will not add words to a statute that have not been supplied by the Legislature). Because section 181.79 does not require employees to prove that deductions caused their wages to fall below the minimum wage, we hold that the court of appeals erred when it concluded that the employees were not entitled to JMOL on that basis.

## II.

With the statutory interpretation questions resolved, we now address whether the employees were entitled to JMOL. We conclude that they are. There is no dispute in·this case that the employees were required to pay the employers back for register shortages, walkouts, and unsigned credit-card receipts. Under the plain language of section 181.79, these deductions from the employees' wages were unlawful. Even when the evidence is viewed in the light most favorable to the employers, there was no legally sufficient basis for a reasonable jury to find that the employers did not make unlawful deductions from the employees' wages in violation of section 181.79. We therefore hold that the employees were entitled to JMOL.

We reverse the court of appeals and remand to the district court with instructions to enter judgment as a matter of law in favor of the employees on liability for their section 181.79 claim and for further proceedings to determine appropriate damages.

Reversed and remanded.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

**5.** Throughout the litigation, both the court of appeals and the district court erred in stating that section 181.79 is part of the PWA. *See Erdman v. Life Time Fitness, Inc.*, 788 N.W.2d 50, 55 (Minn.2010) ("Minn.Stat. § 181.79 is not . . . part of the PWA.").

**6.** The statute permits deductions only where "the employee, after the loss has occurred or the claimed indebtedness has arisen, voluntarily authorizes the employer in writing to make the deduction" or when "the employee is held liable in a court of competent jurisdiction for the loss or indebtedness." Minn.Stat. § 181.79, subd. 1. There was no written agreement or liability imposed by a court in this case.